## DEMURRAGE CHARGES FOR AN UNREASONABLE PERIOD.

Common Pleas Court of Wood County.

THE TOLEDO & OHIO CENTRAL RAILWAY COMPANY v. HARRY L. WILSON.

Decided, June 23, 1913.

*Railways—Refusal of Consignee to Accept Car Load of Coal—Demurrage Charges thereon for Sixty-eight Days Disallowed.*

Where a consignee refuses to accept a car load of freight, the railway company must make disposition thereof within a reasonable time, and a demurrage charge on the car so detained can be made only for such reasonable time.

*Doyle & Lewis*, for plaintiff.
*Stevens & Reed*, contra.

BALDWIN, J.

The parties waiving a jury this cause was submitted to the court upon the pleadings and the evidence.

Plaintiff asks to recover demurrage upon a car loaded with coal, shipped from the Cambridge (Ohio) district to the defendant at Prairie Depot, Ohio. Plaintiff claims for sixty-eight days at a dollar per day, and says that the car was delivered at its destination and the defendant notified thereof on July 21st, 1909; that defendant refused to accept the shipment and it remained on the car until October 8th, 1909, when the coal was sold by plaintiff. The freight charges on the shipment were $46.96. The coal sold for $50, leaving a balance of proceeds of $3.04 which sum plaintiff credits on the demurrage charge and prays judgment for $64.96 and interest.

It is established by the evidence that the defendant ordered this coal to be shipped to him f.o.b. car at Valley Mine in the Cambridge district, on the line of the Pennsylvania Company; that defendant was notified of the arrival of the car immediately

and upon inquiry then made was informed that the freight charge was $1.60 per ton. The defendant immediately and upon the next day after the arrival of the car positively and unequivocally notified the plaintiff's agent at Prairie Depot that he would not pay the rate demanded, and that he would not pay any rate exceeding $1 per ton, and that he would not accept the shipment for the reason solely that the rate exacted was excessive. Whereupon some correspondence was had between the plaintiff and the shipper concerning it, and several communications between the plaintiff and the defendant, the latter always and consistently declining to accept the shipment. Thus the matter drifted along until the plaintiff sold the coal.

One of the questions arises upon the legality of the freight rate demanded. From the evidence adduced on behalf of plaintiff it appears that the shipment was routed from the mine over the Pennsylvania lines via Tiffin to Toledo, thence over the line of the plaintiff to Prairie Depot and that there was no legalized joint rate in effect from the Cambridge district to Prairie Depot, and consequently the rate was made up by combining the local rate of $1 from the mine to Toledo, and sixty cents from Toledo to Prairie Depot. The defendant claims the legal tariff rate would be $1 and that if the car had been routed via the Pennsylvania road to Tiffin, B. & O. to Fostoria and plaintiff's line to Prairie Depot, the joint rate would be $1, or that a combination local tariff by that route would have amounted to $1. In support of this claim defendant offered in evidence two letters of traffic agents of the Pennsylvania, and the B. & O., and a circular of the Pennsylvania setting forth coal rates, issued May 1st, 1912. Plaintiff objected to the introduction of these documents and ruling was reserved. The letter of the Pennsylvania agent bears date of October 25th, 1912, and in connection with the circular to which it refers purports to give the new prevailing rate of $1, but this is three years later than the shipment in question, hence if otherwise competent it would not be relevant to the issue. The letter of the B. & O. agent to Tilton & Son, dated March 3d, 1908, would seem to indicate that there was a legalized rate of $1 from the Cambridge district to Prairie

Depot, in effect prior to this shipment. But manifestly the proof offered is incompetent. It is not a published tariff, such as might be competent under the provisions of the General Code. All these documents offered are in the nature of hearsay, and for that reason must be excluded. This leaves us with no evidence upon this question other than that offered by plaintiff and from that the finding necessarily follows that the legal rate on this shipment was $1.60 per ton and plaintiff had the right to exact the freight charge which it did.

This conclusion renders the defendant liable in the action, but the question arises, what is the extent of his liability? For how long a time is he liable for demurrage under the circumstances of this case? No precedents are cited, and the limited search I have been able to make has developed nothing directly in point. It must be determined by the application of general principles. By the contract of carriage, when the shipment is delivered f.o.b. the consignee either expressly or impliedly obligates himself to accept and remove the shipment from the car of the carrier, either within the time stipulated in the contract of carriage, or if no time is stipulated within a reasonable time. If the consignee fails to do this, it constitutes a breach of his contract with the carrier, and such breach gives the carrier an immediate right of action for the damages resulting. By universal custom, a per diem charge for the detention of the car beyond a certain limit is imposed by the carrier, and this charge or demurrage is sanctioned by the statutes of Ohio. Usually the demurrage is fixed at so much per day, either by express provision of the contract, or a known rule of the carrier, but without stipulation as to the duration of the per diem charge. It is in the nature of liquidated damages for each day of detention.

Where, as in this case, the consignee positively refuses to accept the shipment, and there is no agreement or stipulation as to the time for which the consignee shall be liable for demurrage, a limitation must be fixed in some manner; it can not run indefinitely. Neither can the carrier justly assume to fix the time either arbitrarily, or to suit its own pleasure or convenience. If in this case the plaintiff has the right after refusal of the ship-

ment to allow the car to stand and collect damages for sixty-eight days, why not for sixty-eight weeks or sixty-eight months? To permit the carrier as of right to determine and fix the limitation would lead to absurd results. The plaintiff was informed and knew that the coal would not be received by the defendant. It could as well after conferring with the shipper and ascertaining that neither would take it, have made immediate disposition of the coal by way of sale or otherwise, as to wait sixty-eight days before making the sale.

It is a rule of general, if not universal application, that where by contract something is required to be done, but the time for doing it is not fixed by convention of the parties, it must be done within a reasonable time, and in like manner a subsisting legal duty devolving upon a party, which is ripe for performance, must be performed within a reasonable time.

Upon the breach of this contract by the defendant, he immediately became liable to plaintiff for the consequent damages. But the plaintiff had no right either through negligence or wilfulness to enhance the damages. The law imposes upon a party subjected to injury by a breach of a contract, the active duty of making reasonable exertion to render the injury as light as possible. If such party fails to do this, and by reason of such failure, the damages are unnecessarily enhanced, he must bear the increased loss. This doctrine was applied to cases presenting questions of similar nature in *Telegraph Co.* v. *Cereal Co.,* 3 C.C.(N.S.), 259; *Furniture Co.* v. *Robinson,* 7 N. P., 289, and cases cited, and we think it may be properly applied to this case.

Under this view it was the duty of the plaintiff within a reasonable time after the shipment was refused to make disposition of the coal. Time should be allowed for the plaintiff to confer with the shipper regarding it, and to give notice to both shipper and consignee of the disposition to be made of the coal whether by sale or otherwise. Fifteen days beyond the time fixed by contract for unloading the coal would be ample and reasonable time to accomplish this and stop the accumulation of demurrage. And this time at the rate charged of one dollar per day is the extent of the damage or demurrage for which the defendant is

liable, because after the expiration of such reasonable time defendant did not detain the car.

There is no claim or proof of damage from any other source. The plaintiff admits a credit of $3.04 should be applied thereon. Consequently the finding and judgment is for the plaintiff for $11.96, which with interest thereon to the first day of the term amounts to $14.60, which latter sum the plaintiff will recover with its costs. Judgment accordingly.